UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MARCUS HARGRAVE, individually and on behalf of all others similarly situated,** | § § § | **DOCKET NO.** __2:18-cv-449_____ |
| **Plaintiff,** | § § | **JURY TRIAL DEMANDED** |
| **vs.** | § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **AIM DIRECTIONAL SERVICES, LLC,** | § § | |
| **Defendant.** | § § | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Plaintiff Marcus Hargrave ("Plaintiff" or "Hargrave") brings this lawsuit to recover unpaid overtime wages and other damages from AIM Directional Services, LLC ("AIM") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2.    AIM employs oilfield personnel, like Plaintiff, to carry out its work.

3.    Hargrave, and the other workers like him, was typically scheduled for 12 hour shifts, 7 days a week, for weeks at a time.

4.    But AIM does not pay all of these workers overtime for hours worked in excess of 40 hours in a single workweek.

5.    Instead of paying overtime as required by the FLSA, AIM pays these workers a day-rate and improperly classifies them as independent contractors.

6.    This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

7.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because AIM's corporate headquarters reside in this District, specifically in Nueces County.

## PARTIES

8.    From approximately April 2018 until November 2018, Hargrave worked exclusively for AIM as an oilfield contractor and/or directional driller ("DD") in New Mexico and Texas. Throughout his employment with AIM, he was paid a day-rate with no overtime compensation and was misclassified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

9.    Hargrave brings this action on behalf of himself and other similarly situated workers who were classified as independent contractors and paid by AIM's day-rate system.

10.    AIM paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

11.    The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All oilfield workers who worked for AIM Directional Services LLC during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime (the "Putative Class Members").**

12.    Hargrave seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

13.    Defendant AIM Directional Services, LLC may be served through its registered agent: Michael Jensen at 1622 Yorktown Blvd., Corpus Christi, Texas 78418, or wherever he may be found.

## COVERAGE UNDER THE FLSA

14.    AIM has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.  AIM has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16.  AIM has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17.  Hargrave and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

18.  As will be shown through this litigation, AIM treated Hargrave and the Putative Class Members as employees and uniformly dictated the pay practices Hargrave and the Putative Class Members were subjected to.

19.  AIM's misclassification of Hargrave and the Putative Class Members as independent contractors does not alter its status as an employer for purposes of the FLSA.

## FACTS

20.  AIM operates throughout the United States, and in Texas and New Mexico.

21.  In order to create the goods, and provide the services, it markets to its customers, AIM employs oilfield personnel like Hargrave and the Putative Class Members.

22.  These oilfield workers carry out the hands-on, day-to-day production work of AIM.

23.  AIM paid Hargrave and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

24.   For example, Hargrave worked exclusively for AIM from approximately April 2018 until November 2018 as a directional driller. His primary job duties included operating oilfield machinery, collecting/relaying data, and reporting his daily activities to his field supervisors for analysis.

25.   Hargrave would conduct his day to day activities within designated parameters and in accordance with a predetermined well plan.

26.   Hargrave was paid on a day-rate basis.

27.   AIM typically scheduled Hargrave to work 12 hour shifts, for as many as 7 days a week.

28.   Hargrave regularly worked well in excess of 40 hours in a workweek.

29.   But AIM did not pay Hargrave overtime.

30.   The work Hargrave performed was an essential part of producing AIM's core products and/or services.

31.   During Hargrave's employment with AIM, AIM exercised control (directly or jointly through another company) over all aspects of Hargrave's job.

32.   Hargrave did not make any substantial investment in order to perform the work AIM required of him.

33.   AIM determined Hargrave's opportunity for profit and loss.

34.   Hargrave's earning opportunity was based on the number of days AIM scheduled him to work.

35.   Hargrave was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform his job duties.

36.   Hargrave was not employed by AIM on a project-by-project basis, but rather on a consistent basis.

37.   While Hargrave was classified as an independent contractor, he was regularly on call for AIM and was expected to drop everything and work whenever needed.

38.   AIM, individually or jointly with a company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by Hargrave.

39.   AIM controlled the hours and locations Hargrave worked, the tools he used, and the rates of pay he received.

40.   Even when Hargrave worked away from AIM's offices without the presence of a direct AIM supervisor, AIM still controlled all aspects of Hargrave's job activities by enforcing mandatory compliance with AIM's and/or its client's policies and procedures.

41.   More often than not, Hargrave utilized equipment provided by AIM to perform his job duties.

42.   Hargrave did not provide the equipment he worked with on a daily basis.

43.   AIM made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Hargrave worked in.

44.   Hargrave did not incur operating expenses like rent, payroll, marketing, and insurance.

45.   Hargrave was economically dependent on AIM during his employment.

46.   AIM set Hargrave's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while they were working on jobs for AIM.

47.   Very little skill, training, or initiative, in terms of independent business initiative, was required of Hargrave to perform his job duties.

48.   Indeed, the daily and weekly activities of Hargrave and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by AIM.

49.   Virtually every job function performed by Hargrave and the Putative Class Members was pre-determined by AIM and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

50.   Hargrave and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

51.   Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to oil and gas operations in the field.

52.   Hargrave performed routine manual and technical job duties that were largely dictated by AIM.

53.   All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

54.   The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

55.   The Putative Class Members regularly worked in excess of 40 hours each week.

56.   Like Hargrave, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

57.   AIM did not pay Hargrave on a salary basis.

58.   AIM did not pay the Putative Class Members on a salary basis.

59.   AIM paid Hargrave on a day-rate basis.

60.   AIM paid the Putative Class Members on a day-rate basis.

61.   AIM failed to pay Hargrave overtime for hours worked in excess of 40 hours in a single workweek.

62.   AIM failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

63.   AIM knew, or acted with reckless disregard for whether, Hargrave and the Putative Class Members were misclassified as independent contractors.

64. AIM classifies other workers who perform substantially similar work, under similar conditions, as employees.

65. For example, AIM classifies one or more of its directional drillers as an "employee" for the purposes of withholding employment taxes.

66. AIM classifies one or more of its directional drillers as an "employee" for the purposes of its ERISA benefit plans.

67. AIM's policy of failing to pay Hargrave and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

68. AIM's day-rate system violates the FLSA because Hargrave and the other day-rate workers classified as independent contractors did not receive any pay for hours worked over 40 hours each week.

69. Because Hargrave and the Putative Class Members were misclassified as independent contractors by AIM, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

## FLSA VIOLATIONS

70. AIM violated, and is violating, the FLSA by employing Hargrave and the Putative Class Members for workweeks longer than 40 hours without paying them overtime.[1]

71. AIM knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hargrave and the Putative Class Members overtime.

72. AIM's failure to pay overtime to Hargrave and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

---

[1] This same conduct violates numerous state laws. Therefore, following some discovery and the opt-in process, Plaintiff may seek leave to add additional claims under state laws.

73.   Accordingly, Hargrave and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

74.   The illegal pay practices AIM imposed on Hargrave were likewise imposed on the Putative Class Members.

75.   Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

76.   Numerous other individuals who worked with Hargrave were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

77.   Based on his experiences and tenure with AIM, Hargrave is aware that AIM's illegal practices were imposed on other Putative Class Members.

78.   The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

79.   AIM's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

80.   Hargrave's experiences are therefore typical of the experiences of the Putative Class Members.

81.   The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

82.   Hargrave has no interests contrary to, or in conflict with, the Putative Class Members.

83.   Like each Putative Class Member, Hargrave has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

84.   A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

85.   Absent a class and collective action, many members of the Putative Class Members will not obtain redress of their injuries and AIM will reap the unjust benefits of violating the FLSA .

86.   Furthermore, even if some of the Putative Class Members could afford individual litigation against AIM, it would be unduly burdensome to the judicial system.

87.   Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

88.   The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.   Whether AIM employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

b.   Whether the Putative Class Members were improperly misclassified as independent contractors;

c.   Whether AIM's decision to classify the members of the Class as independent contractors was made in good faith;

d.   Whether AIM's decision to not pay time and a half for overtime to the members of the Class was made in good faith;

e.   Whether AIM's violation of the FLSA was willful; and

f.   Whether AIM's illegal pay practices were applied to the Putative Class Members.

89.   Hargrave and the Putative Class Members sustained damages arising out of AIM's illegal and uniform employment policy.

90.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

91.   Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

JURY DEMAND

92.   Plaintiff demands a trial by jury.

RELIEF SOUGHT

93.   WHEREFORE, Hargrave prays for judgment against AIM as follows:

    a.   An Order designating the Potential Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.   For an Order appointing Hargrave and his counsel to represent the interests of the federal collective;

    c.   For an Order finding AIM liable to Hargrave and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation and other damages allowed by law;

    d.   For an Order awarding attorneys' fees, costs and pre- and post-judgment interest at the highest available rates; and

    e.   For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
    Michael A. Josephson
    State Bar No. 24014780
    Federal ID No. 27157
    Andrew W. Dunlap
    State Bar No. 24078444
    Federal ID No. 1093163
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**